**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WENDELL ROSE, Individually and On Behalf of All Others Similarly Situated, | Civil Action No: 2:18-cv-1344 |
| Plaintiff, | SECURITIES CLASS ACTION COMPLAINT |
| v. | **JURY TRIAL DEMANDED** |
| SYNERGY PHARMACEUTICALS, INC., GARY S. JACOB, GARY G. GEMIGNANI, MARINO GARCIA, and TROY HAMILTON, | |
| Defendants. | |

The allegations in this Securities Class Action Complaint ("Complaint")[1] are based on the personal knowledge of Wendell Rose ("Plaintiff"), as to Plaintiff's own acts, and are based upon information and belief as to all other matters alleged herein.  Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the facts and circumstances alleged herein, including: (i) review and analysis of public filings of Synergy Pharmaceuticals, Inc. ("Synergy" or the "Company") made with the United States Securities and Exchange Commission ("SEC"); (ii) review and analysis of press releases, analyst reports, public statements, news articles, and other publications disseminated by or concerning Synergy and the other defendants named herein (together with Synergy, "Defendants"); (iii) review and analysis of Company conference calls, press conferences, and related statements and materials; and (iv) review and analysis of other documents.  Many additional facts supporting the allegations are known only to the Defendants and/or are within their exclusive custody or control.  Plaintiff believes that additional evidentiary support for the allegations will emerge after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1.      Subject to certain exclusions, this is a federal securities class action brought on behalf of a class consisting of all persons or entities who purchased Synergy securities listed on the NASDAQ or domestically in the United States at artificially inflated prices between November 10, 2016 and November 12, 2017, inclusive (the "Class Period"), and were damaged thereby, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder (the "Class").

---

[1]      All internal citations and quotations are omitted and all emphases are added unless otherwise noted.

1

2.      Synergy is a pharmaceutical company with only one commercial product, plecanatide, a prescription medication approved under the trademark name TRULANCE™ for the treatment of adults with chronic idiopathic constipation ("CIC").  Synergy Pharmaceuticals, Inc., 2016 Annual Report (Form 10-K), at 3 (Mar. 1, 2017) ("2016 Annual Report").

3.      During the Class Period, Defendants knowingly and/or recklessly made two related categories of false and/or misleading statements.  First, Defendants misrepresented that TRULANCE has a superior side-effect profile to its competitors.  Second, Defendants misrepresented that a loan the Company had secured would fund the launch of TRULANCE without diluting shareholders.  Plaintiff and the Class are presumed to have relied on both categories of false and/or misleading statements when transacting in Synergy securities during the Class Period.

4.      The true facts which were known and/or recklessly disregarded by the Defendants, but concealed from the investing public, were as follows:

a)      TRULANCE does not have a side-effect profile superior to its competitors, specifically with regard to the side effect of diarrhea; and

b)      Synergy would be unable to meet the undisclosed loan agreement conditions to obtain the second tranche of $100 million in financing, which required it to have a least $128 million in cash or cash equivalents by January 31, 2018, and as a result, Synergy would need to issue shares and dilute shareholders.

5.      As the truth was revealed, the price of Synergy stock declined and Plaintiff and the Class suffered losses and were directly and proximately damaged thereby.

## JURISDICTION AND VENUE

6.     This action arises under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

7.     This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as certain of the acts and conduct complained of herein, including the dissemination and/or omission of materially false and/or misleading information to the investing public, occurred in this District.  In addition, Synergy maintains its principal executive offices in New York City.

9.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, the Internet, and the facilities of the national securities markets.

## THE PARTIES

**A.     The Plaintiff**

10.     Plaintiff Wendell Rose purchased Synergy securities at artificially inflated prices during the Class Period and was damaged thereby when the truth was revealed, as set forth in the certification attached hereto as Exhibit A.

**B.    The Defendants**

11.    Defendant Synergy is a Delaware corporation with its principal executive offices located at 420 Lexington Avenue, Suite 2012, New York, New York 10170.  During the Class Period, Synergy's stock traded on the NASDAQ under the ticker symbol "SGYP."

12.    Defendant Gary S. Jacob ("Jacob") was at all relevant times Synergy's Chief Executive Officer ("CEO") and President.  Jacob also served, at all relevant times, as a director of the Company.

13.    Defendant Gary G. Gemignani ("Gemignani") has served as Synergy's Executive Vice President and Chief Financial Officer since April 17, 2017.

14.    Defendant Marino Garcia ("Garcia") was at all relevant times Synergy's Executive Vice President and Chief Strategy Officer.

15.    Defendant Troy Hamilton ("Hamilton") was at all relevant times Synergy's Chief Commercial Officer.  Since December 2017, Hamilton has served as the Company's CEO.

16.    Defendants Jacob, Gemignani, Garcia, and Hamilton are collectively referred to herein as the "Individual Defendants."

**FACTUAL BACKGROUND**

17.    Synergy is a pharmaceutical company focused on gastrointestinal therapies.  2016 Annual Report at 3.  Synergy's first and only commercial product, plecanatide (trade name TRULANCE™), is a prescription medication approved under the trademark name TRULANCE™, for the treatment of adults with CIC.  *Id.*  The U.S. Food and Drug Administration approved TRULANCE on January 19, 2017.  *Id.*

18.    People with CIC have persistent symptoms of difficult-to-pass and infrequent bowel movements.  *Id.* at 4.  In addition to physical symptoms including abdominal bloating and discomfort, CIC can adversely affect an individual's quality of life, including increasing stress

4

levels and anxiety. *Id.* TRULANCE is intended to provide more regular, well-formed bowel movements for adults with CIC. Synergy Pharmaceuticals Inc., *Trulance (plecanatide) – Official Patient Site*.[2] Diarrhea is TRULANCE's most common side effect and can sometimes be severe. *Id.*

19. The value of the CIC prescription market is just over $1 billion and growing. *See* David Liang, The Motley Fool, *Synergy Pharmaceuticals: Approval, Now What?* (Mar. 13, 2017).[3] For a piece of this market, TRULANCE competes with two other prescription medications for the treatment of CIC: Amitiza and Linzess. 2016 Annual Report at 17. During the Class Period, Defendants misrepresented that TRULANCE has a ***superior*** side-effect profile to its competitors. In fact, TRULANCE's side-effect profile, especially with respect to diarrhea, is not superior to its competitors. *See* SeekingAlpha, *Synergy Pharma's Trulance:  Best-In-Class Drug, Really?* (Nov. 26, 2017).[4] For example, during a Company conference call held on March 21, 2017, Defendant Garcia touted TRULANCE's supposed edge over the competition: "what [people suffering from CIC] don't want is to be cycling constantly between the constipated hard stools, the painful hard stools or the diarrhea, the side effects they might suffer from some of the treatments they've been on in the past[.]" Synergy Pharmaceuticals, Inc., Oppenheimer Healthcare Conference, at 3 (Mar. 21, 2017) (transcript on file with Fair Disclosure Wire).

---

[2]     Available at https://www.trulance.com/.

[3]     Available at https://www.fool.com/investing/2017/03/13/synergy-pharmaceuticals-approval-now-what.aspx.

[4]     Available to subscribers at https://seekingalpha.com/article/4127672-synergy-pharmas-trulance-best-class-drug-really.

20.     Synergy began distributing TRULANCE in March 2017.  *See* Synergy, Press Release, *Synergy Pharmaceuticals Reports First Quarter 2017 Financial Results and Business Update* (May 10, 2017).[5]  TRULANCE's revenues were insufficient to fully fund Synergy and, on August 9, 2017, the Company stated that it was "evaluating financing options that will provide flexibility and allow [Synergy] to continue to execute on [its] business objectives."  *Id.*

21.     Subsequently, on September 5, 2017, Synergy announced that the Company had closed on a $300 million debt financing structured as senior secured loans from CRG LP, a healthcare focused investment firm (the "CRG Loan"), which granted Synergy an upfront funding of $100 million.  Synergy, Press Release, *Synergy Pharmaceuticals Secures $300 Million Debt Financing* (Sept. 5, 2017).[6]  In a Company press release issued that day, Gemignani stated: "This ***non-dilutive financing*** enhances our cash position and provides us with financial flexibility to continue to execute on the launch of TRULANCE . . . The structure of this financing provides us with access to capital for support of our commercialization of TRULANCE and ***funds our current plans for the Company through 2019*** when, based on our current assumptions, we expect to be cash flow breakeven."  *Id.*  However, Defendants failed to disclose that by the CRG Loan's terms, in order to secure the second tranche of $100 million financing, the Company would need to have cash or cash equivalents "equal to or greater than $128 million" by January 31, 2018.  *See* Synergy Pharmaceuticals, Inc., Term Loan Agreement (Ex. 10.2 to Form 10-Q) at §§1.1, 6.02 (Nov. 9, 2017).

---

[5]     Available at https://ir.synergypharma.com/press-releases/detail/1848/synergy-pharmaceuticals-reports-first-quarter-2017.

[6]     Available at https://ir.synergypharma.com/press-releases/detail/1852/synergy-pharmaceuticals-secures-300-million-debt-financing.

22.    On November 9, 2017, after the market had closed, Synergy released its earnings

for the third quarter of 2017.  Synergy Pharmaceuticals Inc., Press Release, *Synergy*

*Pharmaceuticals Reports Third Quarter 2017 Financial Results and Business Update* (Nov. 9,

2017).[7]  That day, the Company also filed a Form 10-Q Quarterly Report attaching the Term

Loan Agreement as Exhibit 10.2.  Synergy Pharmaceuticals, Inc., Term Loan Agreement (Ex.

10.2 to Form 10-Q) at §§1.1, 6.02 (Nov. 9, 2017).

23.    That day, the Company also released a slide-show presentation detailing the

Company's "Key Performance Metrics" (the "Presentation").  Synergy Pharmaceuticals Inc.,

Presentation, *3Q 2017 Update* (Nov. 9, 2017).[8]  The Presentation revealed a dramatic slowdown

in TRULANCE prescriptions.  From April 2017 through August 2017, the average month over

month growth rate in TRULANCE prescriptions was over 116% per month.  *Id.* at 9.  But in

September 2017, TRULANCE prescriptions grew only 4.4%.  *Id.*  The Presentation also revealed

that September 2017 was the fourth consecutive month in which the number of TRULANCE

prescriptions written by each individual TRULANCE prescriber had decreased.  *Compare id.* at

9 (monthly prescriptions), *with id.* at 10 (monthly prescribers).

24.    On this news, Synergy's share price fell $0.25, or approximately 8.4% from the

previous trading day's closing price of $2.97, to close at $2.72 on November 10, 2017.

25.    On November 13, 2017, before the market opened, Synergy filed an S-3

Registration Statement for the issuance of new shares in the Company.  Synergy Pharmaceuticals

---

[7]    Available at https://ir.synergypharma.com/press-releases/detail/1858/synergy-
pharmaceuticals-reports-third-quarter-2017.

[8]    Available at:
https://d1io3yog0oux5.cloudfront.net/_a02314d9481e09799db1d090f3c360b9/synergypharma/d
b/108/3887/presentation/SGYP+3Q+Update+2017+9Nov17.pdf.

Inc., Registration Statement (Form S-3) (Nov. 13, 2017). In a press release issued that day, the Company explained that the proceeds would help "fund its commercialization activities related to TRULANCE and for working capital and other general corporate purposes." Synergy Pharmaceuticals Inc., Press Release, *Synergy Pharmaceuticals Announces Pricing of Offering of Common Stock and Warrants* (Nov. 13, 2017).[9]

26.    Synergy investors were shocked by news of the share offering because approximately two-months earlier the Company had announced that the ***non-dilutive*** CRG Loan would fund commercialization of TRULANCE: "This was shocking news to shareholders, myself included, who thought a recently arranged $300 million debt facility removed any short or near term funding needs for the company." Bret Jensen, SeekingAlpha, *Synergy Pharmaceuticals: How to Destroy Shareholder Value* (Nov. 15, 2017).[10]

27.    On this news, Synergy's share price fell $0.28, or approximately 10.3% from the previous trading day's closing price of $2.72, to close at $2.44 on November 13, 2017. The next trading day, Synergy's share price fell another $0.41, or approximately 16.8% from the previous trading day's closing price, to close at $2.03 on November 14, 2017.

---

[9]    Available at https://ir.synergypharma.com/press-releases/detail/1859/synergy-pharmaceuticals-announces-pricing-of-offering-of.

[10]    Available to subscribers at https://seekingalpha.com/article/4125292-synergy-pharmaceuticals-destroy-shareholder-value.

## FALSE AND MISLEADING STATEMENTS[11]

**A.    Statements About TRULANCE's Side-Effect Profile**

28.    The Class Period starts on November 10, 2016, the first trading day after Synergy reported its financial results for the third quarter of 2016 after the market close on November 9, 2016, in a press release titled "Synergy Pharmaceuticals Reports Third Quarter 2016 Financial Results and Business Update," wherein Defendant Hamilton is quoted as stating in relevant part:

> "We are laser-focused on our key strategic imperatives of product readiness, market and brand readiness and organizational readiness," said Troy Hamilton, Executive Vice President and Chief Commercial Officer of Synergy Pharmaceuticals Inc. ***"Based on our extensive market research, advisory board meetings and interactions with payers, healthcare providers and patients to-date, we are very encouraged about the positive impact that plecanatide will have in the market place as a <u>differentiated</u> therapeutic option for patients with CIC.*** We are also pleased with the progress our technical operations team has made this year to ensure plecanatide product supply will be ready and available to physicians and patients by our anticipated launch early next year. We strongly believe that we have the right strategy and right team to successfully launch plecanatide and address the unmet needs of a growing GI market."

29.    On March 1, 2017, the Company issued a press release titled "Synergy Pharmaceuticals Reports Fourth Quarter and Full Year 2016 Financial Results and Business Update."[12] In the press release, Defendant Jacob is quoted as stating in relevant part:

> ***The approval of TRULANCE™ (plecanatide) in the United States for the treatment of adults with chronic idiopathic constipation was a tremendous event not just for Synergy, but also for the millions of patients with CIC who have been in need of a <u>new</u> therapeutic option[.]***

---

[11]    Although many statements by the Defendants are listed in this section and are provided for context, the statements being challenged as false and/or misleading are those statements that are ***bolded, italicized, and in some cases <u>underlined</u>*** for emphasis.

[12]    Available at https://ir.synergypharma.com/press-releases/detail/1837/synergy-pharmaceuticals-reports-fourth-quarter-and-full.

30.     On March 21, 2017, the Company participated in a conference call at the

Oppenheimer Healthcare Conference.  On the conference call, Defendant Garcia stated in

relevant part:[13]

> And just to emphasize a little bit on the efficacy, as you can see in this slide, whether you look at the first CIC trial or the second CIC trial, whether you look at the graphs above with complete spontaneous bowel movements or the graphs on the bottom, spontaneous bowel movements, the efficacy was rapid within the first week immediately, and sustained throughout the trial.  And the moment the drug is stopped, you can see how the patients came right backdown to our placebo is.
>
> So very strong efficacy, clearly this is what patients are looking for.  But it's not just about increasing bowel movements.  Having unlimited bowel movements is not what patients are really looking for in terms of normal.  ***What they are looking for is, of course, increased bowel movements, but also normal stool consistency, what they don't want is to be cycling constantly between the constipated hard stools, the painful hard stools or the diarrhea, the side effects they might suffer from some of the treatments they've been on in the past.***
>
>                ***
>
> So, we've talked a little bit about the market.  We've talked a little bit about the product, now let's talk about the strategy.  I am very excited to share this -- and you can go to our website and see more of it, but it is incredibly powerful creative campaign based on a lot of marketing insights from a lot of marketing research, and we are really pleased.  This is the kind of campaign marketers dream of because you usually have trouble finding a campaign that works both for healthcare providers as well as patients, that really scores very well and we're off the charts.
>
> This campaign scored off the charts for both groups.  So it's been a consistent in terms of the messaging, images and creative campaign aimed at both groups, at the patients and the healthcare providers, pharmacists, physicians, etc.  And the whole point is that with chronic constipation, the trade-offs that patients have had to make, ***the extremes they've had to go from constipation or to diarrhea because of some of the medications they may have been on in the past, that they no longer have to make that trade-off.  That TRULANCE provides the promise of being able to make patients feel like they are normal, right smack in the middle between the extremes.***
>
>                ***

---

[13]     Synergy Pharmaceuticals, Inc., Oppenheimer Healthcare Conference, at 1, 3-4 (Mar. 21, 2017) (transcript on file with Fair Disclosure Wire).

So to that point, once a physician gives a sample and the patient gets a sample with the prescription, our goal is to ensure that patients are able to get TRULANCE.  Obviously, in the first few months, we are working very hard with meetings with payers to ensure access to TRULANCE.  In the meantime, we have a co-pay card program.  We have prior authorization help for physicians.  So it's a light hub system that physicians can tap into if there are prior auths [sic] in place.  We have a patient assistance program for those patients that might be underinsured, and we have a full program to ensure that if a patient is able to get a prescription that they do not turn that prescription away at the pharmacy, that they do not abandon it, that they do get it.

Our goal is to ensure patients and physicians try TRULANCE, get experience with it.  *We are confident that once they get that experience and they are able to contrast it not just to our clinical trial data, but to the experience they've had with other therapies, that that will encourage further trial and further usage with their patients.*

31.    On May 3, 2017, the Company participated in a conference call at the Deutsche Bank Health Care Conference.  On the conference call, Defendant Jacob stated in relevant part:[14]

[Unidentified Analyst]:  *What arguments do your representatives use to convince leading health care providers to switch from linaclotide [Linzess] to plecanatide [TRULANCE]?*  And conversely, what arguments do Ironwood reps use to keep those leading HCPs prescribing linaclotide?  And I have a couple more.

[Gary Jacob]:  Thanks for the question.  We're not going to obviously, dive into our message platform for competitive reasons, but as we both discussed and as I talked about when – with the one slide that looked at our profile and ingrained in kind of what we get from the label.  Our discussions are based on pharmacology, the efficacy, the safety/tolerability and the dosing, the balance of that approach.  And you probably see that in some of the other materials that we have in our campaign right now.  So that's kind of what we're talking to.  *I can't really talk to the competition.  I do know obviously they've been out there for long period of time and have had kind of a standard approach.  But for us, we're focused on that balance between the pharmacology, the reason I believe, the efficacy, safety/tolerability and the dosing.*

[Unidentified Analyst]: Okay.  On the adverse events, did you define -- I know the competitor much better than I know your company.  Did you define adverse events in your Phase III studies the same way that they did?

---

[14]    Synergy Pharmaceuticals, Inc., Deutsche Bank Healthcare Conference, at 7 (May 3, 2017) (transcript on file with Fair Disclosure Wire).

[Jacob]: ***So look, I think it's important to recognize that we -- in the summary basis of approval, FDA indicated that they saw no issues with how we recorded, how we coded and how we categorized adverse events***.  And of course, the label speaks for itself.

32.    On August 9, 2017, the Company issued a press release titled "Synergy Pharmaceuticals Reports Second Quarter 2017 Financial Results and Business Update."  In the press release, Defendant Jacob stated in relevant part: [15]

> "The first half of 2017 was a truly transformative period for Synergy, as we transitioned into a commercial organization and launched our first product, TRULANCE, in the U.S. for the treatment of adults with chronic idiopathic constipation (CIC)," said Gary S. Jacob, Ph.D., Chairman and CEO of Synergy Pharmaceuticals Inc.  "***We are pleased with the execution of our commercial strategy, and the strong initial demand for TRULANCE, reinforcing the need for new treatment options for patients suffering from CIC.***  And we are making significant progress in ensuring broad access to TRULANCE, highlighted by a number of favorable early decisions from key national players."

33.    The statements in ¶¶28-32 above were false and/or misleading when made because the Defendants knowingly and/or recklessly disregarded the following material fact that they failed to disclose:

    a)    TRULANCE does not have a side-effect profile superior to its competitors, specifically with regard to the side effect of diarrhea.  ¶19.

**B.    Statements About The CRG Loan**

34.    On September 5, 2017, the Company issued a press release titled "Synergy Pharmaceuticals Secures $300 Million Debt Financing."  In the press release, Defendant Gemignani stated in relevant part:

> NEW YORK—(BUSINESS WIRE)—Synergy Pharmaceuticals Inc. (NASDAQ: SGYP), announced today that the Company has closed on a $300 million debt

---

[15]    Available at https://www.businesswire.com/news/home/20170809006153/en/Synergy-Pharmaceuticals-Reports-Quarter-2017-Financial-Results.

financing structured as senior secured loans from CRG LP, a healthcare focused investment firm, and its lender syndicate.

> *"This non-dilutive financing enhances our cash position and provides us with financial flexibility to continue to execute on the launch of TRULANCE and achieve our business objectives, which we are confident will ultimately maximize long-term shareholder value," said Gary Gemignani, EVP and Chief Financial Officer of Synergy Pharmaceuticals Inc. "The structure of this financing provides us with access to capital for support of our commercialization of TRULANCE and funds our current plans for the Company through 2019 when, based on our current assumptions, we expect to be cash flow breakeven."*

35.    On September 7, 2017, the Company hosted a conference call to discuss the Company's results for the second quarter of 2017. On the conference call, Defendants Jacob and Gemignani stated in relevant part:[16]

> [Gary Jacob]: *… And on Tuesday this week, we announced that we secured a debt financing that provides us with access of up to $300 million in additional capital. This financing strengthens our cash position and provides us with financial flexibility to continue to execute on the launch of TRULANCE and achieve our key business priorities, which we are confident will ultimately maximize shareholder value.*

> ***

> *The debt financing that we just announced on Tuesday provides access to additional capital if and when we need it, and gives us the greatest flexibility to execute on our corporate strategy*. In conjunction with this financing, we are continuing to evaluate opportunities to improve expense management with the goal of transitioning the company to cash flow positive.

> ***

> [Gary Gemignani]: Turning to slide 9. As Gary just mentioned, we achieved an important milestone this week when we announced that the company secured up to $300 million in the debt financing structured as a senior secured loan from CRG, a health care-focused investment firm. *This non-dilutive financing enhances our cash position and provides us with financial flexibility to continue to execute on the launch of TRULANCE and achieve our business objectives, which Gary just outlined for you. The structure of the deal provides us with*

---

[16]    Synergy Pharmaceuticals, Inc., Q2 2017 Business Update Call, at 2-3, 8 (Sept. 7, 2017) (transcript on file with Bloomberg).

***access to additional capital if and when we need it***, to support the product launch and to take the company through 2019 when based on our current assumptions we expect Synergy to be cash flow breakeven.

The first tranche of $100 million was funded upon the execution of the loan documents.  ***Under the terms of the agreement, we have access to an additional $100 million on or before February 28, 2018 and up to two additional tranches of up to $50 million each on or before March 29, 2019, subject to the satisfaction of certain financial and revenue milestones and other borrowing conditions.***

\*\*\*

… While we are not providing revenue or cash burn guidance at this stage, ***we are confident in our ability to meet all of the performance milestones stated under the terms of this agreement, and we will have access to additional capital if and when we need it***.

Going into the second half of 2017, we expect our operating cash burn to be in line with the first half of this year.  As we move into 2018, we expect R&D expenses to decrease primarily due to the wind-down of our IBS-C development program.  Additionally, we have no plans to initiate any new clinical development or early discovery research programs in 2018.

\*\*\*

Looking at SG&A. We're evaluating opportunities to improve cost efficiency measures, and we'll continue to focus investments in key commercial activities that continue to drive TRULANCE demand and ensure long-term success of the franchise and ultimately drive profitability.  We are currently evaluating the 2018 business plans, and we'll provide expense guidance in future periods.  In TRULANCE, we have a high-value asset and a large and growing market, supported by a strong and highly experienced commercial team.  ***With the capital from this financing and continued success of the launch, we are confident we are well positioned to effectively maximize the value of TRULANCE and add significant value to the company and its shareholders.***

\*\*\*

[Timothy Chiang, analyst at BTIG]: And just maybe one follow-up for Gary [Gemignani].  In terms of the CRG deal, I noticed that it is somewhat of a tiered deal in terms of the timing of the debt or the cash that you received. And I just wanted to circle back and ask you how confident are you that you'll hit the milestones or the financial targets that CRG has set for you.

[Gary Gemignani]:  Tim.  Thanks. Look, we're very confident.  In fact, the way we structured this deal, we looked at numerous types of structures and with the goal of getting the right size, the lowest cost to capital and structure in a way where our debt service would be as low as possible in the earlier years so that we could put the cash to work on funding our commercial launch. ***So we're—again, we got—the CRG obviously did extreme amounts of diligence.  And we are—as we constructed the tiers, we're very comfortable we'll be able to meet all of the commitments.***

36.     The statements in ¶¶34-35 were false and/or misleading when made because Synergy, Jacob, and Gemignani knowingly and/or recklessly disregarded the following material fact that they failed to disclose:

a)      Synergy would be unable to meet the undisclosed loan agreement conditions to obtain the second tranche of $100 million in financing, which required it to have $128 million in cash or cash equivalents by January 31, 2018, and as a result, Synergy would need to issue shares and dilute shareholders.  ¶21.

**THE FACTS CONCEALED BY THE DEFENDANTS CAUSED PLAINTIFF'S LOSS**

37.     The true facts regarding TRULANCE's side-effect profile in comparison to its competitors which were omitted and/or misrepresented by the Defendants caused the price of Synergy stock to decline, thereby causing harm to investors.  Specifically, on November 9, 2017, the Company disclosed that growth in TRULANCE prescriptions had nearly flat-lined and that individual prescribers were writing fewer TRULANCE prescriptions, which was a direct result of the undisclosed fact that TRULANCE's side-effect profile was not superior to its competitors. *See* ¶¶19, 23-24.  As a direct and proximate result, Synergy's share price fell $0.25, or approximately 8.4% from the previous trading day's closing price of $2.97, to close at $2.72 on November 10, 2017.

38.     The true facts concerning the CRG Loan's insufficiency, given its undisclosed terms, to meet the Company's financial needs such that the Company would need to conduct a

share offering the near future, caused the price of Synergy stock to decline, thereby causing harm to investors.  Specifically, Synergy's November 13, 2017 pre-market announcement of a share offering corrected Defendants' previous misstatements and omissions that the CRG Loan would allow for TRULANCE commercialization without shareholder dilution.  *See* ¶¶25-27.  As a direct and proximate result, Synergy's share price fell $0.28, or approximately 10.3% from the previous trading day's closing price of $2.72, to close at $2.44 on November 13, 2017.  The slide continued the next trading day, as Synergy shares closed at $2.03 on November 14, 2017, another one-day decline of approximately 16.8%.

39.     Until shortly before Plaintiff filed this Complaint, he was unaware of the facts alleged herein and could not have reasonably discovered the Defendants' misrepresentations and omissions by the exercise of reasonable diligence.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all persons and entities who purchased Synergy securities during the Class Period, and were damaged thereby, seeking to pursue remedies under the Exchange Act.

41.     Excluded from the Class are the Defendants named herein, members of their immediate families, any firm, trust, partnership, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  During the Class Period, Synergy common stock was actively traded on the NASDAQ, which is an efficient market.  While the exact number of Class members cannot be

determined at this early stage, Plaintiff believes that thousands of people held Synergy securities during the Class Period.  Record owners and other members of the Class may be identified from records maintained by Synergy or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the Class because Plaintiff and all members of the Class were similarly affected by Defendants' unlawful conduct as complained herein.

44.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action and securities litigation.  Plaintiff has no interests that are contrary to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class.  The questions of law and fact common to the Class include, *inter alia*:

a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)     Whether Defendants' publicly disseminated statements made during the Class Period contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

c)     Whether and to what extent Defendants' material untrue statements and/or omissions of material fact caused the market price of Synergy's securities to be artificially inflated during the Class Period;

d)      Whether Defendants acted with the requisite level of scienter in omitting and/or misrepresenting material facts;

e)      Whether the Individual Defendants were controlling persons of Synergy;

f)      Whether reliance may be presumed pursuant to the fraud-on-the-market doctrine or the *Affiliated Ute* presumption; and

g)      Whether Class members have sustained damages, and if so, the proper measure of damages.

46.     Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this action because, among other things, joinder of all members of the Class is impracticable.  In addition, since the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it nearly impossible for members of the Class to bring individual actions.

### *RESPONDEAT SUPERIOR* AND AGENCY PRINCIPLES APPLY

48.     Synergy is liable for the acts of the Individual Defendants and other Company officers, directors, employees, and agents under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment or agency with the authority or apparent authority to do so.

49.     The scienter of the Individual Defendants and other Company officers, directors, employees, and agents is similarly imputed to Synergy under *respondeat superior* and agency principles.

## CONTROL PERSON LIABILITY

50.     The Individual Defendants, because of their positions with Synergy, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants had a duty to promptly disseminate complete, accurate, and truthful information with respect to TRULANCE's side effect profile and the CRG Loan. Each of the Individual Defendants was provided with copies of the Company's SEC filings, reports, and press releases alleged herein to be false or misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

## THE FRAUD ON THE MARKET PRESUMPTION

51.     The false and/or misleading statements alleged herein were material and public and, at all relevant times, the market for Synergy's securities was an efficient market for the following reasons, among others:

a.     Synergy's common stock was listed on the NASDAQ Stock Market, a highly efficient market;

b.     As a registered and regulated issuer of securities, Synergy filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information;

c.     Synergy regularly communicated with public investors through established market communication mechanisms, including through regular dissemination of press

19

releases on the national circuits of major newswire services and through other wide-ranging public disclosures such as communications with the financial press and other similar reporting services;

d.      The market reacted to public information disseminated by Synergy;

e.      Several analysts followed Synergy's business and wrote reports which were publicly available and affected the market place.[17]

52.      As a result of the above, the market for Synergy's securities promptly digested current information with respect to the Company from all publicly available sources and reflected such information in the securities' market prices.  The historical daily trading prices and volumes of Synergy securities are incorporated herein by reference.

53.      The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to overvalue Synergy's securities.  Without knowledge of the misrepresented or omitted facts, Plaintiff and other members of the Class purchased Synergy securities between the time that the Defendants made the material misrepresentations and omissions and the time that the truth was revealed, during which time the price of Synergy's securities was artificially inflated by Defendants' misrepresentations and omissions.  Thus, a presumption of reliance applies.

### THE *AFFILIATED UTE* PRESUMPTION

54.      At all relevant times, Plaintiff and the Class reasonably relied upon Defendants to disclose material information as required by law and in the Company's SEC filings.  Plaintiff and the Class would not have purchased or otherwise acquired Synergy securities at artificially

---

[17]      *See* NASDAQ, *Analyst Firms Making Recommendations*, http://www.nasdaq.com/symbol/sgyp/recommendations (last visited Mar. 2, 2018).

inflated prices if Defendants had disclosed all material information as required. Thus, to the extent Defendants wrongfully failed to disclose material facts and information concerning the circumstances surrounding TRULANCE's side effect profile in comparison to its competition and the CRG Loan, or otherwise omitted material facts and information, Plaintiff and the Class are presumed to rely on Defendants' omissions as established by the Supreme Court in *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972).

## CAUSES OF ACTION

## COUNT I

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

55.     Plaintiff re-alleges each allegation above as if fully set forth herein.

56.     This Count is brought under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against all Defendants.

57.     During the Class Period, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder by making the false and misleading statements specified herein, including the statements in SEC filings, presentations, press releases, and conference calls concerning TRULANCE's side effect profile and the CRG Loan, whose truth they knowingly or recklessly disregarded when they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false or misleading.

58.     The acts and scienter of the Individual Defendants and other Company employees are imputed to the Company under the principles of agency and *respondeat superior.*

59.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a

continuous course of conduct to conceal non-public, adverse material information about TRULANCE's side effect profile and the CRG Loan, and the Company's operations and financial condition as reflected in the misrepresentations and omissions set forth above.

60.     Defendants each had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth by failing to ascertain and to disclose such facts even though such facts were available to them, or deliberately refrained from taking steps necessary to discover whether the material facts were false or misleading.

61.     As a result of Defendants' dissemination of materially false and misleading information and their failure to disclose material facts, Plaintiff and the Class were misled into believing that the Company's statements and other disclosures were true, accurate, and complete.

62.     Plaintiff and other Class members purchased Synergy securities, without knowing that Defendants had misstated or omitted material facts about the Company's operations and financial performance or prospects.  In doing so, Plaintiff and other Class members relied directly or indirectly on false and misleading statements made by Defendants, and/or an absence of material adverse information that was known to Defendants or recklessly disregarded by them but not disclosed in Defendants' public statements.

63.     Plaintiff and other Class members were damaged as a result of their reliance on the Defendants' false and/or misleading statements and misrepresentations and omissions of material facts.  Plaintiff and other Class members would not have purchased Synergy securities at the prevailing prices had they known the truth about the matters discussed above.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members have suffered damages in connection with their purchases or acquisitions of Synergy securities.

65.     Plaintiff is filing this action within two years after the discovery of the facts constituting the violation, including facts establishing scienter and other elements of Plaintiff's claims, and within five years after the violations with respect to Plaintiff's investments.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act Against the Individual Defendants**

66.     Plaintiff re-alleges each allegation above as if fully set forth herein.

67.     This Count is asserted against the Individual Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), on behalf of all members of the Class.

68.     As set forth in Count I, Synergy committed a primary violation of Section 10(b) of the Exchange Act by knowingly and/or recklessly disseminating materially false and misleading statements and/or omissions throughout the Class Period.

69.     Each of the Individual Defendants, by reason of their status as senior executive officers and/or directors of Synergy, directly or indirectly, controlled the conduct of the Company's business and its representations to Plaintiff and other Class members, within the meaning of Section 20(a) of the Exchange Act.  The Individual Defendants directly or indirectly controlled the content of the Company's SEC filings, press releases, and other statements related to Plaintiff's and other Class members' investments in Synergy securities within the meaning of Section 20(a) of the Exchange Act.  Therefore, the Individual Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

70.     The Individual Defendants controlled and had the authority to control the content of the Company's SEC filings, press releases, and other statements.  Because of their close

23

involvement in the every-day activities of the Company, and because of their wide-ranging supervisory authority, the Individual Defendants reviewed or had the opportunity to review these documents prior to their issuance, or could have prevented their issuance or caused them to be corrected.

71.    The Individual Defendants knew or recklessly disregarded the fact that Synergy's representations were materially false and misleading and/or omitted material facts when made. In so doing, the Individual Defendants did not act in good faith.  By virtue of their high-level positions and their participation in and awareness of Synergy's operations and public statements, the Individual Defendants were able to and did influence and control Synergy's decision making, including controlling the content and dissemination of the documents that Plaintiff and other Class members contend contained materially false and misleading information and on which Plaintiff and other Class members relied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own behalf, and on behalf of the Class, demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and statements alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorney's fees, expert fees, and other costs; and

D.    Awarding rescissory damages in favor of Plaintiff and the other Class members where appropriate against all Defendants, jointly and severally, for all injuries sustained as a

24

result Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment

and post-judgment interest, as allowed by law;

      E.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all triable claims.

Dated:  March 2, 2018

Respectfully submitted,

By: /s/ *Richard W. Gonnello*
     Richard W. Gonnello

Richard W. Gonnello
Sherief Morsy
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
      smorsy@faruqilaw.com

*Attorneys for Plaintiff*

# EXHIBIT A

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Wendell Rose, ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a complaint against Synergy Pharmaceuticals, Inc. and has authorized the filing of the complaint.

2.  Plaintiff selects Faruqi & Faruqi, LLP as counsel for purposes of prosecuting this action and claims against the defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Synergy Pharmaceuticals, Inc. securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:


7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this  23  day of February, 2018.


_Wendell Rose_
Wendell Rose

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price Per Share |
|---|---|---|---|
| Purchase | 3/8/2017 | 5,000 | $5.5500 |
| Purchase | 3/10/2017 | 1,500 | $5.1500 |
| Purchase | 4/3/2017 | 3,500 | $4.6000 |
| Purchase | 4/18/2017 | 1,000 | $4.1500 |
| Purchase | 5/2/2017 | 1,014 | $4.1800 |
| Purchase | 5/17/2017 | 8,900 | $3.9500 |
| Purchase | 9/22/2017 | 767 | $2.6000 |
| Purchase | 9/29/2017 | 2,660 | $2.8999 |
| Purchase | 10/10/2017 | 255 | $3.3732 |
| Purchase | 10/10/2017 | 2,700 | $3.3750 |